```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF TENNESSEE
                       WESTERN DIVISION
```

| | |
|---|---|
| JEFFERY J. WOODARD, | ) |
| Plaintiff, | ) |
| vs. | )   No. 08-2744-STA-tmp |
| ANTHONY C. ALEXANDER, et al., | ) |
| Defendants. | ) |

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
ORDER DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

On October 28, 2008, Plaintiff Jeffery J. Woodard, a resident of Memphis, Tennessee, filed a pro se complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., accompanied by a motion seeking leave to proceed in forma pauperis and appointment of counsel. (Docket Entries ("D.E.") 1 & 2.) The Court issued an order on September 3, 2009, that granted leave to proceed in forma pauperis, denied appointment of counsel, dismissed the Title VII claims against the individual defendants, dismissed all other claims without prejudice, and directed the Clerk to issue process for, and the marshal to effect service on, the remaining defendants, Shelby County Government and the Shelby County Division of Correction (collectively, "Shelby County"). (D.E. 5.) Defendants answered the complaint on October 2, 2009. (D.E. 8.)

The factual allegations of Plaintiff's complaint consist, in their entity, of the following:

> Due to collusion of the aforementioned representatives of the Shelby County Government Administration Staff my dismissal from employment on June 21, 2007 and my subsequent Civil Service Hearing was retaliatory and in violation of my Fourteenth Amendment Due Process Rights. The filing of previous EEOC charges, bring charges against the administration of the Shelby County Division of Correction, Shelby County Mayor A.C. Wharton and spearheading the strategy against privatization of the Shelby County Division of Corrections and other government entities placed me in a hostile working environment. The Shelby County Government and the aforementioned representatives of Shelby County Government are in violation of my rights under Title VII of the 1964 Civil Rights Act. During the past several years I have been labeled as a trouble maker and have been constantly disciplined and harassed by the administrators at the Division of Corrections with fabricated circumstances which never occurred.

(D.E. 1 at 3.)

Attached to the complaint is a charge of discrimination Plaintiff filed with the Equal Employment Opportunity Commission ("EEOC") against the Shelby County Division of Corrections, which stated as follows:

> I was hired with the above named employer since May 1, 1989. I held the position of Correctional Officer. On June 21, 2007, I was discharged. The reasons given for my discharge were intentional failure to carry out instructions, willful disregard of lawful orders, unsatisfactory work and other (violation of the standards of conduct 1.3.11, the incident reporting policy, contacts with offenders and ex-offenders, inmate and staff communications policy, post orders policy, employees general post orders, shelby county [sic] employees handbook and M.O.U.).
>
> I believe that I have been discriminated against in retaliation for filing previous charges of discrimination (490-2007-02080C), in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Id. at 5.)

On December 3, 2010, Shelby County filed a motion for summary judgment, supported by a legal memorandum, a statement of undisputed facts, the unsworn statement under penalty of perjury of Stephanie Sumler and various attachments, and excerpts from the deposition of Plaintiff, which was taken on October 28, 2010. (D.E. 20.) Plaintiff did not respond to the motion, and the time for a response has expired.

Summary judgment is appropriate "if . . . there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). As the Supreme Court has explained:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citation omitted).

Under Fed. R. Civ. P. 56(e)(2), "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in

this rule—set out specific facts showing a genuine issue for trial." "In considering a motion for summary judgment, 'the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion.'" Pollack v. Pollack, 154 F.3d 601, 611 (6th Cir. 1998) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (same).[1]

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also id. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]"); Matsushita, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is

---

[1] Rule 56(e)(1) sets forth in detail the evidentiary requirements applicable to a summary judgment motion:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

4

some metaphysical doubt as to the material facts.") (footnote omitted). The Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter, however. Liberty Lobby, 477 U.S. at 249. Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.[2]

Fed. R. Civ. P. 56(f) provides as follows:

If a party when opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1)  deny the motion;

(2)  order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or

(3)  issue any other just order.

"Beyond the procedural requirement of filing an affidavit, Rule 56(f) has been interpreted as requiring that a party making such a filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." Cacevic v. City of Hazel Park, 226 F.3d 483, 488 (6th Cir. 2000); see also Good v. Ohio Edison Co., 149 F.3d 413, 422 (6th Cir. 1998); Plott v. General Motors Corp., 71 F.3d 1190, 1196-97 (6th Cir. 1995). The Sixth Circuit has held that, unless the nonmoving party files a Rule 56(f) affidavit, a

---

[2] The cases cited in the text were decided before the 2007 and 2009 amendments to Rule 56. According to the advisory committee note, the 2007 changes were intended to be stylistic only. The 2009 amendments do not alter the substantive legal standards.

5

district court cannot decline to consider the merits of a summary judgment motion on the ground that it is premature. <u>Wallin v. Norman</u>, 317 F.3d 558, 564 (6th Cir. 2003).

In this case, Plaintiff did not file a Rule 56(f) affidavit, and he did not argue that he needs additional discovery to respond to the summary judgment motion. The Court will, therefore, address the merits of the motion.

The facts relevant to this motion are as follows:[3]

1. The Plaintiff, Jeffery Woodard, was employed as a Corrections Officer at the Shelby County Division of Corrections (hereinafter, "DOC"). The DOC operates a prison located in Memphis, Tennessee.[4]

2. On January 20, 2007, during the 1400-2200 hours shift, Corrections Officer Myron Stiger opened the doors to the cells of inmates housed on protective custody in the J-Building of the DOC allowing all of the inmates to come out of their cells at the same time.

3. Once the inmates were out of their cells, Inmate Aristeo Huberto assaulted and injured Inmate John Keith. Inmate Keith did not receive medical attention.

4. Two days later, on January 22, 2007, Inmate Johnny Ingle sent a handwritten "formal complaint" to Director Andrew Taber complaining about the fight between a Caucasian and a Hispanic on January 20 in which the Caucasian received an injury to his left cheek and eye. Ingle also complained that Sergeant Jabbar Jones had assaulted him on the same shift on January 20 and that Inmate Matthew Bellamy had witnessed the assault.

---

[3] Because Plaintiff has not responded to the summary judgment motion, the Court has accepted as true Defendant's statement of undisputed material facts. <u>See, e.g.</u>, <u>Washington v. DSC Logistics</u>, No. 07-2599-STA-dkv, 2009 WL 4591080, at *1 (W.D. Tenn. Dec. 1, 2009). The Court has confirmed that there is factual support for those proposed findings.

[4] Unless indicated otherwise, the authority for each factual finding is stated in Defendants' statement of undisputed material facts, found at D.E. 20-1, pp. 2-9.

5. Because there were no incident reports, medical reports, or log entries of an assault on January 20, all employees assigned to J-Building on January 20 during the 1400-2200 hours were instructed to complete incident reports. All officers who completed the incident reports denied knowledge of any altercation on the day in question. The officers also denied that the inmates were released from their cells at the same time.

6. Officer Stiger stated that he had spoken with Inmate Keith on January 23, and at that time, Keith did not have a black eye.

7. Captain Leroy Chambers spoke with several inmates, including John Keith. Inmate Keith told Chambers that Inmate Huberto had stabbed him in the face with a pen, and he had received no medical attention for his injury. Chambers noted an injury under Inmate Keith's eye.

8. The Office of Professional Standards ("OPS") reviewed the recorded telephone calls made by inmates during the time of the incident on January 20 and determined that Officer Stiger had lied when he had stated, under oath, that there had been no incident that day. OPS also determined that Stiger had falsified the log book in J-Building regarding the rock time of Inmate Keith and Inmate Huberto in an attempt to hide the altercation.

9. After the preliminary investigation was completed, Stiger was given written notice that a Loudermill due process hearing would be conducted on March 29, 2007, and he would be given an opportunity to respond to certain charges against him at the hearing.[5]

10. Plaintiff Jeffery Woodard represented Stiger at his Loudermill hearing on March 29, 2007. At the hearing, Woodard stated that he had witnessed other "mixing of inmates." Lieutenant Sumler, the hearing officer, stated that Woodard's witnessing such policy violations and failing to report them constituted a violation of the Incident Reporting Policy.

---

[5] In Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985), the Supreme Court held that certain public employees have a property right in continued employment and, therefore, their employment cannot be terminated without due process. Certain DOC employees are members of a labor union, and they have a right to a due process hearing prior to the imposition of serious discipline, including suspensions and terminations.

11. At Stiger's hearing, Woodard also presented fifteen (15) handwritten statements by inmates that had been collected on January 28, 2007, by Sergeant Jabbar Jones.

12. Lieutenant Sumlar found that Sergeant Jones' collecting the inmate statements and intentionally not making them available to Captain Chambers, his supervisor, impeded the DOC investigation of the incident.

13. Based on the documents identified in the notice of Stiger's Loudermill hearing, and the information provided by Stiger at his Loudermill hearing, Lieutenant Sumlar found Stiger guilty of the charges outlined in his notice. By letter dated April 23, 2007, Sumlar notified Stiger that his employment was terminated effective that day.

14. Officer Willie Robinson was one of the officers present when Officer Stiger opened the doors and released the inmates from their cells in January 2007. Lieutenant Sumlar presided at a Loudermill hearing for Robinson on April 3, 2007. Robinson was represented by Woodard at the hearing. At Robinson's hearing, Woodard presented a statement by Inmate Bellamy recanting a prior written statement he had given during Captain Chambers' preliminary investigation.

15. By letter dated May 22, 2007, Lieutenant Sumlar gave Woodard notice that a Loudermill due process hearing would be conducted on certain charges against him and that he would be given an opportunity to respond to the charges.

16. Woodard has admitted that the letter notifying him of the date of his Loudermill hearing alleged that he had "engaged in inappropriate conduct by questioning Inmate Bellamy." It alleged: "You also withheld pertinent information from the division concerning an ongoing investigation involving a sergeant and three corrections officers." It also alleged: "Your decision to question Inmate Bellamy and then to have him complete a statement recanting the statement that he had already submitted to administration caused interference with management's investigation."

17. The Standards of Conduct policy states that the DOC subscribes to the Professional Code of Ethics of the American Correctional Association and expects its

employees to follow the ethical standard embodied therein.

18. Woodard admitted that if he used his "official position to gain advantage for another in an improper and unauthorized manner," he would be violating the standards of conduct.

19. Woodard admitted that the Incident Reporting Policy required all employees to "submit incident reports to their immediate supervisor prior to the end of their tour of duty concerning significant events occurring within the jurisdiction of the Division of Corrections."

20. Woodard has admitted that he was charged with witness tampering and intentional failure to carry out instructions, and he was found guilty of the charges against him.

21. Woodard's Loudermill hearing was conducted on June 7, 2007.

22. One of the charges against Woodard was that on March 31, 2007, he inappropriately interacted with Inmate Matthew Bellamy and manipulated him by questioning him about Sergeant Jabbar Jones' assault on Inmate Ingle in January 2007. According to Officer Marilyn Cole's incident report dated April 13, 2007, Woodard asked Bellamy to write a statement which Officer Cole and Officer Willie Woody witnessed. Inmate Bellamy then wrote a statement saying that he "never wrote a statement against Sgt. J. Jones."

23. Another of the charges against Woodard was that he intentionally impeded an official investigation by twice witholding evidence. He failed to inform management of the inmates' written statements that Sergeant Jones had collected on January 28, 2007.

24. Woodard was also charged with failing to complete an incident report. He was charged with hiding information until he thought it benefited the person he was representing.

25. Woodard testified that he was given an opportunity to tell his side of the story at his Loudermill hearing.

26. After considering all the evidence at his Loudermill hearing, Lieutenant Sumlar found that Woodard had failed to proffer any information that would

exonerate him or mitigate the charges against him. The DOC terminated his employment on June 21, 2007. Sumlar's letter notified Woodard that he could appeal her decision to the Civil Service Merit Board within seven days.

27. Woodard filed an appeal with the Civil Service Merit Board that was heard on October 25, 2007. After hearing evidence presented by Woodard and the DOC, the Board found Woodard guilty as charged and upheld his termination. By letter dated November 28, 2007, the Board notified Woodard that he could appeal the decision to the Circuit or Chancery Court of Shelby County within sixty (60) days.

28. Woodard testified that he had the right to appeal the Civil Service Merit Board's decision to the Chancery Court, but he decided not to appeal the decision.

29. Woodard filed his complaint initiating this action on October 26, 2008.

30. Woodard's claims in this suit are set forth in his complaint and its attachment. See supra pp. 2-3.

31. Woodard cannot identify anyone who was treated differently or more favorably than he.

32. There is no one with whom he compares himself to support his claims in this lawsuit.

33. Woodard is aware of no statements or comments by anyone regarding his EEOC charges that support his claim that he was terminated because of his EEOC charges.

34. Woodard testified that Lieutenant Sumlar, who conducted his Loudermill hearing, "probably may have been acting in good faith."

35. Woodard has no other evidence to support his claims.

36. In Jeffery J. Woodard v. Shelby County Government, et al., No. 2:05-cv-02809-SHM-tmp (W.D. Tenn.), Woodard contended that he was suspended in retaliation for his "addressing privatization attempts and . . . filing previous EEOC charges." Woodard also contended that he was suspended for sending a memorandum to then-Shelby County Mayor AC Wharton and addressing the County Commission.

Although Defendants have devoted much of their motion to arguments about why they are entitled to summary judgment on the claim under 42 U.S.C. § 1983 (D.E. 20-1 at 9-12), it is unnecessary to address those arguments. The order issued on September 3, 2009, dismissed that claim, sua sponte, for failure to state a claim, but advised Plaintiff that the dismissal "is without prejudice to Plaintiff's right to file an amended complaint in compliance with the Federal Rules of Civil Procedure." (D.E. 5 at 6.) Plaintiff made no further efforts to prosecute any § 1983 claims. Those claims are, therefore, no longer a part of this suit.

Plaintiff's Title VII claim alleges that his employment was terminated because of his previous protected activity. (D.E. 1 at 2.) Defendants first argue that Plaintiff's Title VII claim is barred by res judicata due to the jury verdict in case number 05-2809. (D.E. 20-1 at 12-13.) "A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies.'" Montana v. United States, 440 U.S. 147, 153 (1979). "Courts apply the doctrine of res judicata to promote the finality of judgments, which in turn increases certainty, discourages multiple litigation and conserves judicial resources." Sanders Confectionery Prods., Inc. v. Heller Fin., Inc., 973 F.2d 474, 480 (6th Cir. 1992). "Under res judicata, a final judgment on the merits of an action precludes the parties

11

or their privies from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94 (1980). To apply the doctrine of res judicata, or claim preclusion, four elements must be satisfied:

1. A final judgment on the merits in the first action by a court of competent jurisdiction;
2. The second action involves the same parties, or their privies, as the first;
3. The second action raises an issue actually litigated or which should have been litigated in the first action;
4. An identity of the causes of action.

Id.

Defendants have not sufficiently developed this argument to permit an assessment of its merit. The protected activity in this case is the charge of discrimination filed with the EEOC in 2007, and the protected activity in case number 05-2809 was one or more of the fourteen (14) EEOC charges Plaintiff filed between 2001 and 2004. Therefore, any claim arising from the 2007 charge was not actually litigated in case number 05-2809. Defendant has not stated that Plaintiff should have sought to amend his complaint in the prior case to assert a new claim arising from the 2007 EEOC charge. This aspect of Defendants' motion for summary judgment is DENIED.

Next, Defendant contends that Plaintiff cannot establish a prima facie case of retaliation. (D.E. 20-1 at 13.) In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the Supreme Court established a framework for evaluating evidence in discrimination cases where, as here, the plaintiff has no direct evidence of discrimination. That process has been summarized as follows:

12

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate nondiscriminatory reasons for the employee's rejection." . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981) (citations omitted). This standard is used for disparate treatment and retaliation claims under laws proscribing employment discrimination, including Title VII. See, e.g., Harris v. Metropolitan Gov't of Nashville & Davidson Cnty., 594 F.3d 476, 484-85 (6th Cir. 2010); Hunter v. Secretary of U.S. Army, 565 F.3d 986, 995-96 (6th Cir. 2009); Martin v. Toledo Cardiology Consultants, Inc., 548 F.3d 405, 411 (6th Cir. 2008); Policastro v. Northwest Airlines, Inc., 297 F.3d 535, 538 (6th Cir. 2002). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at 253.

Under 42 U.S.C. § 2000e-3(a), "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." The elements of a Title VII retaliation claim are as follows:

> (1) [the plaintiff] engaged in activity protected by Title VII; (2) the defendant knew of [his] exercise of [his] protected rights; (3) the defendant subsequently took an adverse employment action against the plaintiff or subjected the plaintiff to severe or pervasive retaliatory harassment; and (4) there was a causal connection between the plaintiff's protected activity and the adverse employment action.

Barrett v. Whirlpool Corp., 556 F.3d 502, 516 (6th Cir. 2009); see also Hunter, 565 F.3d at 995-96.

In this case, Defendants argue that Plaintiff cannot show a causal connection between his previous EEOC charges and Defendants' decision to terminate his employment. (D.E. 20-1 at 13.) In this case, Plaintiff filed the relevant EEOC charge in 2007, and he was terminated in 2007.[6] Defendants have not discussed the relevant caselaw concerning temporal proximity between the protected activity and the alleged retaliation. See, e.g., Imwalle v. Reliance Med. Prods., Inc., 515 F.3d 531, 550 (6th Cir. 2008); Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 523-26 (6th Cir. 2008). Defendants have provided no explanation for their argument that Plaintiff cannot establish causation and, therefore, have not satisfied their burden of identifying the basis for their motion. This aspect of Defendant's motion is DENIED.

Next, Defendants argue that Plaintiff cannot show that their stated reason for terminating him is pretextual. (D.E. 20-1 at 13-14.) Once a plaintiff establishes a prima facie case of disparate treatment, the burden shifts to Defendants to articulate a legitimate, nondiscriminatory reason for their actions. See supra

---

[6] The record does not disclose the date on which Plaintiff filed the relevant EEOC charge.

14

p. 13. In this case, Defendants have stated that Plaintiff was terminated because he was found to have committed several acts of misconduct, including witness tampering, impeding an official investigation, and failing to complete an incident report. (Factual Findings ("FF") 22-24, 26.) This proffered explanation is "facially legitimate and non-discriminatory." White v. Baxter Healthcare Corp., 533 F.3d 381, 392 (6th Cir. 2008).

The burden then shifts to Plaintiff to show that the asserted justification is a pretext for unlawful discrimination. As the Sixth Circuit has explained:

> Pretext may be established "either directly by persuading the [trier of fact] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256 . . . . A plaintiff will usually demonstrate pretext by showing that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action. See Imwalle v. Reliance Med. Prods., Inc., 515 F.3d 531, 545 (6th Cir. 2008) . . . . However, the plaintiff may also demonstrate pretext by offering evidence which challenges the reasonableness of the employer's decision "to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 578 (6th Cir. 2003) (en banc); see also Burdine, 450 U.S. at 259 . . . ("The fact that a court may think that the employer misjudged the qualifications of applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination." (emphasis added)); Loeb v. Textron, Inc., 600 F.2d 1003, 1012 n. 6 (1st Cir.1979) ("The reasonableness of the employer's reasons may of course be probative of whether they are pretexts. The more idiosyncratic or questionable the employer's reason, the easier it will be to expose as a pretext, if indeed it is one.").

Id. at 393(footnote omitted).

In this case, Plaintiff has not argued that he did not, in fact, violate Defendants' policies, and he has not argued that his violation of policy was not sufficiently serious to warrant his termination. He also has no evidence that Defendants did not believe that he committed the violations that were charged. To the contrary, Plaintiff has admitted that the decisionmaker, Lieutenant Sumlar, "probably may have been acting in good faith." (FF 34.) Plaintiff has no information that any other employee engaged in similar, or comparably serious, misconduct and was not terminated. (FF 31, 32.) Plaintiff does not claim that any decisionmaker made any derogatory comment about the fact that he had filed an EEOC charge. (FF 33.) Plaintiff has admitted that he has no other evidence to support his retaliation claim. (FF 35.)

Because Plaintiff has not come forward with sufficient evidence to create a factual issue on the question of pretext, the Court GRANTS Defendants' motion for summary judgment on Plaintiff's Title VII claim. The complaint is DISMISSED WITH PREJUDICE. Judgment shall be entered for Defendants.

The Court must also consider whether Plaintiff should be allowed to appeal this decision in forma pauperis, should he seek to do so. The United States Court of Appeals for the Sixth Circuit requires that all district courts in the circuit determine, in all cases where the appellant seeks to proceed in forma pauperis, whether the appeal would be frivolous. Floyd v. United States Postal Serv., 105 F.3d 274, 277 (6th Cir. 1997). Twenty-eight U.S.C. § 1915(a)(3) provides that "[a]n appeal may not be taken in

16

forma pauperis if the trial court certifies in writing that it is not taken in good faith."

Pursuant to the Federal Rules of Appellate Procedure, a non-prisoner desiring to proceed on appeal in forma pauperis must obtain pauper status under Fed. R. App. P. 24(a). See Callihan v. Schneider, 178 F.3d 800, 803-04 (6th Cir. 1999). Rule 24(a) provides that if a party seeks pauper status on appeal, he must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the litigant must file his motion to proceed in forma pauperis in the Court of Appeals. Fed. R. App. P. 24(a)(4)-(5).

The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). The test under 28 U.S.C. § 1915(a) for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any non-frivolous issue. Id. at 445-46. The same considerations that lead the Court to grant Defendants' motion for summary judgment also compel the conclusion that an appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith and Plaintiff may not proceed on appeal in forma pauperis. Leave to proceed on appeal in forma pauperis is, therefore, DENIED. If Plaintiff files a notice of appeal, he must also pay the full $455

17

appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the United States Court of Appeals for the Sixth Circuit within thirty (30) days.

IT IS SO ORDERED this 8th day of February, 2011.


**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE